Good morning, everyone. Welcome. Our first case this morning is Orr v. Assurant Employee Benefits. Mr. Guyon. Yes, thank you, Your Honor. May it please the Court and counsel, my name is Emanuel Guyon. I'm the counsel for the Orr daughters who are the claimants in the insurance policy that arose by and through the ERISA laws as a result of the employment of Mr. Orr with a trucking company. And Mr. Orr met his unfortunate death. The daughters filed the first claim, and I know it's all in the brief, in August of 2012, and they were denied. They filed on their own. They filed another attempt to collect the policy in October of 2012. That was denied in December, and that's when they contacted me. With that denial in December to the Orr daughters, each of them, two of them, there was a Form 48750 that contained instructions that were given to them to collect on the policy. And when I read that, I told them to send that to me. They contacted me in early, well, late December, early January of that year, and I said, send whatever you have. And when I reviewed what they had done, I determined that a second appeal would be appropriate, and I asked for an extension of time, which was granted, and then filed my application. How could there be a second appeal at that stage when there had not been a first appeal yet? Well, Your Honor, the assurant employee, Terry Steen, if you look at the bull print document, that was coded as an appeal denied. So that was determined to be the, in my opinion, that was determined to be the denial of the first attempt. That was really the second attempt. The December 10th? Pardon? The December 10th was an appeal denied? Is that what you're referring to? Yes, if you look at it. How could that be since there had not been any determination of the claim? There was a determination of the claim by Terry Steen on 12-7 of 2012, and it was coded in their records as a denial of the claim. And that's why when I sent my information and the exhibits that I accumulated in this case, when I sent them to assurant in March of 2012. But there was no intervening appeal. Pardon? There was no intervening appeal by you. No, that's correct. So the December 10th communication could not have been the denial of an appeal. That was the denial of the claim. Yes. Well, the way I read what they had done, it was an appeal. They sent it to assurant in Kansas City, and they denied it. That's what they sent to me. They also had that Form 48750 that said you have to have two appeals. So when I sent to assurant in March of 2013, I put a label on the top, Second Appeal and Exhaustion Remedies, and I made it very clear. I knew about exhaustion remedies. I knew what had to be done. And I think that the assurant, as fiduciary, has an obligation. If that isn't correct, they have the obligation to inform me. They never did that. All they ever said was that the decedent was intoxicated, and therefore we don't have to pay. Now, the assurant records, and if you look at that same form that I keep referring to, 48750, they talk about a first review. Well, I interpreted the December, they actually applied in October of 2012. That was denied in December of 2012. I took that as the first appeal. And for that reason, I said the work that I did was going to be the second appeal. Now, if it wasn't, I think they had the obligation to tell me that. They didn't say anything about it. And what happened was their own records, if you look at them, in that bold print document, they have a pretty nice system. It's sort of like a docket sheet that the court keeps, and it tells everything that is done at whatever level. And the work that I sent to Mr. Watkins, the claim specialist he's called, he quoted it as second level of appeal. That's what he said. And it's repeated in that document a lot. So now they're here saying that there weren't two levels of appeal. And so, again, I'll refer to my reply brief. I talked about this concept of positional analysis, that if you read that form, first level, second level, file suit. And that's exactly what I did. The defense then said that I abandoned the claim, and so that's where we came here. Well, I actually came to the district court, and Judge Cannelli ruled against us on the basis that it was only one appeal. Your Honor, I don't think that the defense can prove the intoxication defense in this case. They don't know when he died. They don't know the circumstance of when he died. They rely exclusively on the autopsy report. And there are three doctors, and they have fertile imaginations because the autopsy statute says that they can only comment about postmortem medical facts. And they filled out their opinions as to driving erratically, and lost control, intoxicated, and things like that. And they had no facts on which to base those opinions that they put in their reports. And that's exactly what the court based its denial of our claim. Well, actually, no. As I read the lower court's opinion, the judge did not reach the merits of the claim. No, he did not. It was a complete exhaustion ruling. Yeah. You're correct, Your Honor. But I don't think you can undertake any analysis of this case unless you have some concept of what the merits of the case are, too. I mean, there has to be some relationship that whatever you're deciding has to be related to the merits of the case. And you're correct that Judge Connelly did not make a finding on the merits. And I mentioned a moment ago that I think the fiduciary, if we are deficient in any way, they have the obligation to tell us so. And they never said anything. All they ever said was, intoxication, we're not paying. Again, I knew about the doctrine of exhaustion of remedies, and I was aware of it. In my communication of March 13th of 2013, I sent them everything we had. I did attempt to try to find more facts, particularly when he died, but that was frustrated because when I filed a suit in LaSalle County, thinking I could subpoena an individual to find out more about when he traveled that route, the suit was removed to a federal district court, and so I was frustrated in that respect. So, Your Honors, I would just say that I think that we did everything that we were asked to do, told to do. I think that this case is compensable. I do believe that we should be compensated as the daughter should be compensated. And I would ask that you reverse the order of the district court. With that, I'll conclude and ask if you have any questions. Okay. Thank you. Thank you. Mr. Hedrick. Thank you, and good morning. I am Russell Hedrick of the Tennessee Bar. I am appearing on behalf of Defendant Apley Union Security Insurance Company. There is only one issue before this court, and that is, did Judge Cannelli abuse his discretion in requiring plaintiffs to exhaust administrative remedies? That's the way this court interprets the standard of review and what the court has to do. There are two components, however, to that determination, as I understand the way the issues are made up. One, did the plaintiffs, the oars in this case, fail to exhaust administrative remedies? And we think the answer to that question is undeniably yes, based on the record before this court, which is the only thing the court has before it. And then the other question, I think, as I understand the issues made up by the appellant, is, is there some excuse if they didn't exhaust administrative remedies for that failure? Anything in this court's precedence that would excuse them? And did, then, Judge Cannelli abuse his discretion in failing to credit any argument about excuse? To understand the claim proceeding in this case, six things under the administrative process have to occur before a claimant can be deemed to have exhausted administrative remedies in the first instance. There has to be, A, a claim. B, there has to be an initial claim denial. C, because union security has a two-level system of appeal, there has to be a first appeal filed by the claimant. There has to be a decision, an adverse benefit determination on the first appeal. There has to be an appeal filed, a second appeal filed by the claimant. And then there has to be a decision on the second appeal. Judge Cannelli found consonant with the record in this case that the plaintiffs had fulfilled items one through five, that they had gotten up to bat, as it were, by filing a second appeal. The only thing that they had to do at that point was to await the decision of the claim administrator, my client union security, and administrative remedies would then have been exhausted. This was made clear to the claimant in this case by the life claims review procedure, which accompanied each decision, and specifically told the claimant and counsel that it's only when there is a final denial by the life claims appeal committee on that second appeal that there is a right to proceed with an action for judicial review in the district court under 504A of ERISA. And we have, in our brief at page 14, set out a chart that indicates the five events that occurred, that Judge Cannelli found had occurred in the record. Mr. Guyon says that something happened on December 7th before the December 10th letter that constitutes the actual claim denial, which means that the December 10th letter was an appeal denial. The bulk print, just so we understand where that is, is nothing more than the company punching the button and spitting out the information that's accumulated on its automated claims processing system. It's not designed to benefit lawyers and clerks necessarily. It's designed to be a graphical depiction of what happens, various actions in the case, and things like that. Is that internal only? Does it go to the claimant? Only if there's a request for relevant documents, as is the claimant's right, and then it's sent to a claimant if there's a request, free of charge. Otherwise, it's internal only? It's not a notice of denial of claim? Its use is strictly internal, and the only reason why it's produced is there are some limited instances where the only place that the information is actually kept that's relevant to a review of what happens in the claim, there are at times when, for instance, telephone calls are recorded, and if a claim processor types that directly into the system, in the bulk print is the only place that will show up. So it's just an internal log of the activity on the file, essentially? It's just an internal log, and that December 7th appeal completed, or whatever it is that counsel is referring to, is nothing more than an internal entry that tells the claims manager that the determination has been made, the only thing that's going to occur is the letter's going to go out, which happened three days later. Okay, so that generates the letter that goes to the claimant saying your claim is denied? That's correct. So in this case, we think crystal clear, as found by Judge Connelly, that, as he put it, claimants almost exhausted their administrative remedies but for precipitously filing suit, and at that point my client closed the administrative record because it had to face litigation in its then-chosen form in the district court. All right. Mr. Guyon says that it was clear that there was a misapprehension based on the references in some of the correspondence to a second-level appeal that really was a first-level appeal and that it was the obligation of the insurer as a fiduciary to clear up that confusion. As I read his authorities, he relies basically on three cases, and in those three cases, Killian, Kenseth, and one out of the Sixth Circuit called James, they are breach of fiduciary duty cases where, in the James case, it was clear that there was affirmative misrepresentation to employees about retiree medical benefits, and there is no affirmative misrepresentation in this case. And, indeed, in response to requests for information? I'm sorry? In those cases, there was an affirmative request for information, too, that was? Yes, and that brings me to Kenseth and Killian, the decisions of this court. Really, I think Killian supports my position because, in that case, the proof was equivocal about whether there was a direct request for a determination of whether certain providers were in-network under the health plan. But what swayed the panel in that case is that the documents, the plan documents, were clear. And I submit that when this court takes a look at the review procedures that were sent at both critical levels, the initial denial and at the denial of the first appeal, it's crystal clear what has to happen. The problem with the Orr's theory is they never account for what they contend is the initial claim denial. And it's clear on this record there is nothing that constitutes a claim denial that happened prior to that. And the entire case proceeds along those lines. If there was some misapprehension in what had happened, it didn't come from any act of union security. And the interesting thing about the appeal procedures is, at the very bottom, when it's talking about what you need to do, and you need to do something in 60 days, needs to be in writing, if you have any questions or need help with the appeal, give us a call. And that tells, just like the documents in the Killian case, check on your coverage. If you have questions about it, we think it's clear in the procedures themselves. But if not, then give us a call and we'll tell you. I don't think that there was ever any duty, and I'm not sure if I put myself in the claims analyst position when somebody had just told you they were doing a first appeal, and then they come around and file something that they say is the second appeal with no intervening decision, I'm not sure what I would have said. It's just in any event. So I don't think the cases support an affirmative duty to comment about that. And the real inquiry at that point would have been, what were the ORs trying to get to? And the only thing that could have given them some sense is that, had they told Union Security that it was their intent to go file suit, then unions, I'm sure that the first thing that would have come back is something about this plan did exhaust your administrative remedies, even up to what I call the second appeal. There were some equivocal statements, I think, about exhaustion of administrative remedies, but the ORs never informed Union Security that, having just submitted information pursuant to a second appeal, that they were fixing to file suit. And therein lies the rub, and I think that theory is not well taken. If the Court has nothing further, that completes my presentation. Thank you, Counsel. Thank you. Mr. Guyon, anything further? Your Honor, we're having trouble getting out of the blocks on 1 and 2. We say that we did it twice. They say we did it once. The fiduciary has the obligation to tell me if I'm deficient in any way in the claims procedure. They didn't say anything. All they ever said was, we're not paying because the man was intoxicated. If I needed to have a second level of appeal that Mr. Hedrick just referred to, and what Mr. Watkins in that bulk print document that's attached to the appendix in the reply brief, they always quote it as a second level of appeal. Now, where I come from, if you refuse to pay, that equals denial. The only resource we ever had was that document 48750. And then they have said that I had to tell them to send it to the claims committee, where they initially told us that as fiduciary they had the sole discretion to make the decisions in the case. I think the position and the holding of the district court in this case is that there was a second level appeal initiated in July of 2013. It's just that you didn't wait to get an answer before going to court. I don't recall that, Your Honor. But if Judge Kennelly did say that, and I did send them a letter saying we don't agree with your denial and we're going to investigate further if we can. And then, again, when I filed the lawsuit, it was with the intent of using subpoena power to get a witness statement that would refuse to me. And if you care to, it's not on the record, but I can tell you what happened in that respect. But I know it's inappropriate to comment about something not on the record, but I can tell you why it happened, why I filed suit, if you're interested. If it's not in the record, no. Okay. With respect to the comment about the Jane case, that had to do with an affirmative misrepresentation, but it really was offered in this case for the concept of positional analysis. In other words, on that form 48-750, which was the only resource we had, the way the ascendancy of the first level, second level, and file suit, they interpreted that to be that's what I had to do. And I gave them everything I could, what I had at my disposal, the 12 exhibits that I submitted to Judge Connelly. And I might add that the only document that documents that the defendants have ever offered is this autopsy report and the reports of Dr. Hummelier and his two cohorts who, again, I think they have fertile imaginations because they filled in a lot of pre-event facts that they had no basis to say that. So I guess that's all that I would have to say. I think we did exhaust our remedies. I think we appealed the case twice. And we're having trouble with one and two, I guess. That's all I can say. So it's been a pleasure being here. I know I give my clients every consideration. Do you have any other questions? Apparently not. Thank you, Counsel. Thank you. Our thanks to both counsel. The case is taken under adjournment.